# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MAYUKO HOLWILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ABBVIE INC., RICHARD A. GONZALEZ, and WILLIAM J. CHASE,<br><br>Defendants. | Case No. 1:18-cv-06790<br>Hon. Charles R. Norgle<br><br><br><br><br>**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION TO COMPEL**<br><br>**PUBLIC VERSION** |

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................................ ii
I.  ARGUMENT ............................................................................................................................. 2
    A.  The Requests Call for Documents Highly Relevant to Plaintiffs' Claims ............... 2
    B.  The Requests are Proportionate to the Needs of the Case ....................................... 4
    C.  Defendants' Untimely and Misplaced 11th-Hour Effort to "Moot" the
        Motion ........................................................................................................................ 6
    D.  Defendants' Attacks on the Relevance of the Requests Fail ................................... 9
II. CONCLUSION ........................................................................................................................ 15

## TABLE OF AUTHORITIES

**CASES**

*Doe v. Loyola University Chicago*,
 2020 WL 406771 (N.D. Ill. Jan. 24, 2020) ................................................................... 5

*Equal Employment Opportunity Commission v. Heart of CarDon, LLC*,
 339 F.R.D. 602 (S.D. Ind. 2021) ................................................................................... 5

*Federated Mutual Insurance Co. v. Coyle Mechanical Supply Inc.*,
 2021 WL 3186959 (S.D. Ill. July 28, 2021) ................................................................. 9

*Heartland Recreational Vehicles v. Forest River*,
 2010 WL 3119487 (N.D. Ind. Aug. 5, 2010) ............................................................... 9

*Hogue v. Fruehauf Corp.*,
 151 F.R.D. 635 (C.D. Ill. 1993) .................................................................................... 7

*In re Ferro*,
 632 B.R. 656 (Bankr. N.D. Ill. 2021) ........................................................................... 2

*Life Spine, Inc. v. Aegis Spine, Inc.*,
 2021 WL 5415155 (N.D. Ill. Nov. 18, 2021) ............................................................... 5

*McKinney/Pearl Restaurant Partners, L.P. v. Metropolitan Life Insurance Co.*,
 322 F.R.D. 235 (N.D. Tex. 2016) ................................................................................. 5

*Oppenheimer Fund, Inc. v. Sanders*,
 437 U.S. 340 (1978) ..................................................................................................... 9

*Powers v USF Holland Inc.*,
 2008 WL 11390856 (N.D. Ind. Nov. 25, 2008) ........................................................... 8

*Republic of Nicaragua v. Standard Fruit Co.*,
 937 F.2d 469 (9th Cir. 1991) ...................................................................................... 15

*Vakharia v. Swedish Covenant Hospital*,
 1993 WL 3119487 (N.D. Ill. Sept. 15, 1993) .............................................................. 8

*Yahnke v. County of Kane*,
 2013 WL 4537865 (N.D. Ill. Aug. 27, 2013) .............................................................. 2

**RULES**

ABA Model Rules of Professional Conduct Rule 3.3(a) ................................................. 5

Fed. R. Civ. P. 26(b)(1) .................................................................................................... 5

Fed. R. Civ. P. 26(g) ........................................................................................................ 7

Fed. R. Civ. P. 34(b)(2)(C) .............................................................................................. 2

N.D. Ill. L.R. 83.50 ........................................................................................................... 5

Defendants contend they have mooted Plaintiffs' Motion to Compel.[1] In support, they insist that a set of "narrowed requests" control the Motion's outcome, rather than the text of the RFPs as propounded and now before this Court. Within the context of these so-called narrowed requests, Defendants also posit that no responsive materials exist. But these narrowed requests were *rejected by Defendants* months ago during the course of the parties' meet-and-conferrals on the RFPs. They have no place in deciding the Motion, and Defendants may not now unilaterally resurrect them solely to moot it.

Plaintiffs rejected the "mootness" argument when Defendants first presented it at the eleventh-hour, only just before the Opposition was filed. Nevertheless, the Opposition now resurrects favorable snippets of these long since discarded discussions, to undermine Plaintiffs' efforts to seek the full relief to which they are entitled.

Plaintiffs Requests are unambiguous, and the relief sought for the two RFPs at issue is not restricted to the compromise positions proposed by Plaintiffs, and rejected by Defendants, months ago. First, RFP No. 47 seeks "All Documents and Communications reflecting any analyses You performed Concerning AbbVie's payments to healthcare prescribers and the prescribing of Humira, including speaking engagements." Mot. Ex. A at 7, ECF No. 172-2 ("RFP No. 47"). Second, RFP No. 58 seeks "All Documents Concerning Humira or executive compensation that You produced in connection with the U.S. House of Representatives' September 2020 subpoena to AbbVie." Mot. Ex. C at 5, ECF No. 172-4 ("RFP No. 58"). Defendants avoid the issue of whether responsive materials exist to the RFPs *as propounded* and fail entirely to meet their burden

---

[1] This brief is in response to the Defendants' Opposition to Plaintiffs' Motion to Compel, ECF No. 174 (the "Opposition"), filed on July 1, 2022. Unless otherwise noted, all capitalized terms have the same meanings as set forth in Plaintiffs' Motion to Compel, ECF No. 172 (the "Motion").

of substantiating their proportionality objections. For the reasons set forth in the Motion and below, the Court should grant the Motion.

I. ARGUMENT

    A. **The Requests Call for Documents Highly Relevant to Plaintiffs' Claims**

**RFP No. 47:** RFP No. 47 calls for AbbVie's analyses concerning its payments to Humira prescribers, including payments made to them in exchange for promoting Humira (on AbbVie's behalf) to their healthcare provider peers—a practice known as "speaker programs." Mot. 2-3; *see also* Order at 4 (Sept. 1, 2020), ECF No. 104 (denying motion to dismiss and finding "Plaintiffs have alleged facts with sufficient particularity to support their claim that AbbVie provided unlawful kickbacks to physicians who prescribed Humira").

With respect to the parties' meet-and-confer efforts regarding RFP No. 47, the Motion describes proposals that the parties discussed "in an attempt to reach compromise." Mot. 3. These discussions were held, in part, to address Defendants' objection that the Request was "confusing and unintelligible." Opp'n Ex. 3, ECF No. 174-3 ("Correspondence").[2] These discussions were intended to achieve compromise—***if the parties could reach an agreement***—whereby Plaintiffs would "accept fewer of the relevant and responsive documents we believe we are entitled to under [the RFPs] as propounded, but more than contemplated in your Objections and Reponses to [the

---

[2]     Defendants' responses to RFP No. 47, ECF No. 174-1 ("Resp. to Req. No. 47"), and to RFP No. 58, ECF No. 174-4 (inadvertently referenced as RFP No. 16 by Defendants) ("Resp. to Req. No. 58"), are deficient in several respects. Not only do they fail to state whether "any responsive materials are being withheld on the basis of [their] objection" in violation of Fed. R. Civ. P. 34(b)(2)(C), but they repeat "the same baseless, often abused litany that the requested discovery is vague, ambiguous, overly broad, unduly burdensome, or that it is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence," *Yahnke v. Cnty. of Kane*, 2013 WL 4537865, at *2 (N.D. Ill. Aug. 27, 2013). "Federal courts have explained that objections of this ilk are 'tantamount to not making any objection at all.'" *In re Ferro*, 632 B.R. 656, 659 (Bankr. N.D. Ill. 2021).

RFPs]. In exchange, Defendants would have provided [a broader set of documents] than you believe we were entitled to receive, albeit less than called for under [the RFPs] as propounded." Opp'n Ex. 3 at 1.

One proposal discussed by the parties for RFP No. 47 was to narrow its scope to documents "reflecting analyses of the return-on investment ('ROI') for Humira Complete speaker programs." Mot. 3. But that proposal was rejected by Defendants. *See* Mot. Ex. B, ECF No. 172-3 ("Defs.' Ltr. of May 10, 2022"). In rejecting compromise, Defendants stood on their initial objections, which characterized RFP No. 47 as not "relevant to [Plaintiffs'] allegations" and "disproportionate to the needs of the case" and refused to produce anything at all. *Id.* at 2; *see also* Resp. to Req. No. 47 at 5. No indicia of any disproportionate burden stemming from the RFP was provided at that time, or since. In response, Plaintiffs declared impasse and informed Defendants that this Motion would follow on the Requests. *See* Opp'n Ex. 3 at 10 ("[I]t appears that our attempts [to] reach compromise with respect to RFP Nos. [47 and 58] have failed, and the Parties are now at an impasse. Accordingly, we will seek relief from the Court *on those requests*." (emphasis added)). Plaintiffs did not represent that they would only seek relief on the narrower scope of Requests that Defendants rejected following the meet-and-confer.[3]

Three days later Plaintiffs filed the Motion, which detailed the relevance of RFP No. 47 to their claims. *See* Mot. 11-13 (discussing allegations, *inter alia*, ¶¶ 46-52, 85-86, 103, and 111 of the Complaint, ECF No. 74). Defendants provided no additional information for nearly six weeks.

---

[3] The Opposition asserts that Plaintiffs only first "backed away from the parties' prior discussions" in response to Defendants' last-minute efforts to "moot" the motion. Opp'n 9. Not so. Defendants' suggestion that the Motion is limited to the already-rejected "narrowed requests," *id.* at 6, is based only on cherry-picked excerpts reciting the parties meet-and-confer efforts. They fail to explain why Plaintiffs would move only on such narrowed Requests, rather than the Requests as propounded, when they were already rejected following those meet-and-confer calls. Plaintiffs have made no such concessions, in their Motion or anywhere else.

3

**RFP No. 58:** RFP No. 58 calls for documents concerning Humira or executive compensation that AbbVie already has already collected, reviewed, and produced as part of a U.S. House of Representatives' investigation of AbbVie's drug pricing practices. *See* RFP No. 58, ECF No. 172.04. RFP No. 58 specified that it was not limited to the Relevant Period that the parties had determined would control the temporal scope of Plaintiffs' other requests. *Id* at 5.

In an attempt to reach a negotiated compromise during the parties' meet-and-confer efforts, Plaintiffs suggested additional limits to the subject matter and time period of RFP No. 58.[4] *See* Mot. 3-4. Again, this attempt at compromise was rejected by Defendants who claimed, without providing any legal or factual basis, that RFP No. 58 was "neither relevant nor proportionate to the needs of the case" to the extent it called for information predating the Class Period by more than one year. Defs.' Ltr. of May 10, 2022 at 2. But the Motion *did* explain that not only was RFP No. 58 relevant to proving falsity and scienter through pre-Class Period activities, but it also related specifically to the claims described at ¶¶ 21, 92, 98, 172, 216-217, and 314 of the Complaint. *See* Mot. 5-11. As with RFP No. 47, Plaintiffs heard nothing further from Defendants on RFP No. 58 until the eve of their Opposition's due date.

**B.    The Requests are Proportionate to the Needs of the Case**

Once Plaintiffs have met their burden of demonstrating the relevance of their Requests, the "question then becomes whether [the requests are] proportional to the needs of the case" under Rule 26(b)(1). *Doe v. Loyola Univ. Chi.*, 2020 WL 406771, at *5 (N.D. Ill. Jan. 24, 2020). When,

---

[4]    Absent any superseding compromise between the parties (which did not occur) or order from this Court, RFP No. 58 is already limited in scope by calling only for a subset of the documents on which the House Committee requested information—they must be related to Humira and/or executive compensation—and entirely excludes, for example, documents related to Imbruvica (another AbbVie drug being investigated by the House Committee). RFP No. 58's temporal scope also was fundamentally limited to the same period as that contained in the House Committee's own underlying document request.

4

as here, a propounding party's "discovery requests appear relevant to the claims and defenses in th[e] case, [the objecting party] bears the burden, as the party resisting discovery and in light of the ordinary presumption in favor of broad disclosure, to establish the documents are not relevant and should not be produced." *Id*. at *2; *accord Equal Emp. Opportunity Comm'n v. Heart of CarDon, LLC*, 339 F.R.D. 602, 605 (S.D. Ind. 2021) ("The party objecting to the discovery [on proportionality grounds under Rule 26] bears the burden of showing the specific reasons why each particular request is improper.").

Defendants misstate the law by attempting to shift onto Plaintiffs the burden of substantiating the proportionality of the Requests,[5] but it is *their* burden to carry. *See, e.g.*, *Life Spine, Inc. v. Aegis Spine, Inc.*, 2021 WL 5415155, at *4 (N.D. Ill. Nov. 18, 2021) ("Although the burden of establishing relevancy rests initially on the party requesting discovery, the burden shifts to the objecting party to show why the request is improper if the discovery appears relevant."); *McKinney/Pearl Rest. Partners, L.P. v. Metro. Life Ins. Co.*, 322 F.R.D. 235, 242 (N.D. Tex. 2016) (requiring opposing party to submit affidavits or offer evidence "revealing the nature" of the burden). Defendants are silent as to any purported disproportionality related to the Requests, and thus fail to make the showing necessary to carry their burden.[6] Instead, the Opposition focuses on their misguided "mootness" argument, as further addressed below. Nevertheless, the Motion

---

[5] *See* Opp'n 6 ("Plaintiffs must . . . show that the information is 'proportional to the needs of the case.'"). This is yet another unfortunate instance of Defendants misrepresenting the law to this Court. *See* ECF No. 155 at 5 ("The Supreme Court and Seventh Circuit's holdings on this issue are binding, despite Defendants['] counsel's failure to disclose those truth-on-the-market holdings to this Court when citing these opinions for other, more favorable, propositions of law." (citing ABA Model Rules of Professional Conduct Rule 3.3(a); N.D. Ill. L.R. 83.50)).

[6] The Declaration of Brian Dawson does not address any proportionality factors. *See* Opp'n Ex. 2, ECF No. 174-2 ("Dawson Decl.").

preemptively raised each proportionality factor and shows that the Requests are proportional to the needs of this case.[7]

### C. Defendants' Untimely and Misplaced 11th-Hour Effort to "Moot" the Motion

Nearly six weeks after the Motion was filed, and just two days before filing their Opposition, Defendants' counsel requested that Plaintiffs withdraw the Motion as "moot" because they asserted that no responsive documents existed for either of the RFPs now before the Court. *See* Opp'n Ex. 3 at 4. With respect to RFP No. 47, Defendants claimed to have "conducted an investigation regarding whether any return-on-investment analyses for speaker programs about Humira Complete were created and concluded that they were not." *Id.* At that time, they provided no further information on this investigation. With respect to RFP No. 58, they claimed that "no documents . . . not already public" were "responsive to your narrowed request . . . discussed during the parties' April 21 meet and confer." *Id.* Defendants asserted that, at some time *after* the Motion was filed, they had "searched AbbVie's production to the House committee" (using an undisclosed search criteria) for some portion of the pre-Class Period timeframe called for by RFP No. 58 for documents that might have been responsive to one of Plaintiffs' previously rejected proposals, but found nothing "not already public." *Id.* Defendants have *never* provided any further information as to how they made that determination; nor, when pressed, any response as to whether *any* responsive documents exist for RFP No. 58 as propounded; nor any response as to why this information was only first being provided *ten weeks* after the Parties had last met and conferred on the issue and over six weeks after the Motion had been filed.[8] "Discovery cannot be a game of

---

[7] *See* Mot. 14 (addressing proportionality of the Requests in context of this case).
[8] Rule 26(g) requires a party to make "a reasonable inquiry" regarding discovery requests and refrain from "interpos[ing]" objections or responses "for any improper purpose, such as to . . . cause unnecessary delay. . . ." Defendants' tactic of forcing Plaintiffs to move this Court prior to

6

hide-and-seek. . . . When discovery requests are made by a party, the party to whom the request is made has an obligation to respond accurately and fully." *Hogue v. Fruehauf Corp.*, 151 F.R.D. 635, 639 (C.D. Ill. 1993).

In the correspondence that followed, Plaintiffs reminded Defendants that discussions regarding any narrowing of RFP Nos. 47 and 58 were nullified by the parties' inability to reach an agreement, and that the relief requested did *not* arise from Plaintiffs' (rejected) compromise offers during the meet-and-confer, but rather from the RFP language as propounded. *See* Opp'n Ex. 3 at 3 ("Defendants rejected those proposed compromises . . . . As a consequence, our motion does not include any 'narrowed request' along lines already rejected; rather, we seek all documents responsive to the request[s] as propounded."); *id.* at 1 ("[A]s we communicated during our April meet-and-conferrals, if no solution could be achieved by agreement following good-faith attempts to compromise, we intended to seek all relevant and responsive information called for under [the Requests], limited only by the discretion of the Court, which is exactly what our motion seeks.").

But Defendants ignored Plaintiffs' reiteration of the scope of their Motion, and now ask the Court to deny the Motion on the basis of this purported "mootness"—which exists *only if* they are permitted to ignore the Requests as propounded and substitute long-expired proposals they previously rejected. In support, Defendants contend that courts deny motions to compel as "moot" when the sought-after documents do not exist. But here, Defendants do not appear to claim that documents responsive to the Requests *as propounded* do not exist. Rather, their mootness claim is limited to documents responsive to their unilaterally imposed, previously rejected, but newly resurrected "narrowed requests" in an effort to deny discovery into otherwise responsive

---

making the first inquiry into even their "narrowed request" stands in dereliction of Defendants' duty to meet and confer in good faith in this matter, and undermines their self-interested "mootness" argument. Fed. R. Civ. P. 26(g).

7

documents that *do* exist and, as shown below, are demonstrably relevant to the Requests as propounded. Defendants cite *Vakharia v. Swedish Covenant Hospital*, in which the court mooted a motion seeking "production of the documents requested" because the responding party "represent[ed] that they have produced all such documents." 1993 WL 3119487, at *2 (N.D. Ill. Sept. 15, 1993). In contrast, here Defendants seek to *avoid* producing the "documents requested" in the RFPs by substituting different, "narrowed requests" from those propounded.

Significantly, Defendants have *never* represented that they have produced "all documents" called for and relevant to RFPs No. 47 and 58, even when prompted to do just that.[9] Furthermore, Defendants have *never* provided any information as to whether responsive documents exist for the Requests *as propounded*, yet have been withheld, in violation of Rule 34(b)(2)(C), which requires the responding party to state whether "any responsive materials are being withheld on the basis of [its] objection." *See, e.g.*, Resp. to Req. No. 47 at 5; Resp. to Req. No. 58 at 1-2. Defendants' other "mootness" authorities are also inapplicable on these facts. In *Powers v USF Holland Inc.*, the court denied as moot a request seeking certain "complaints" when the responding party kept "no record of any such complaints." 2008 WL 11390856, at *4 (N.D. Ind. Nov. 25, 2008). In *Heartland Recreational Vehicles v. Forest River*, the court denied reconsideration only after it was "convinced that there is a sufficient basis upon which the Magistrate Judge concluded that [the responding party] engaged in a comprehensive search of their . . . records . . . and did not recover any records" relevant to the claims. 2010 WL 3119487, at *5 (N.D. Ind. Aug. 5, 2010). Here, the

---

[9] *See* Opp'n Ex. 3 at 3 ("If you are willing to represent that all documents produced to the House Committee and responsive to RFP 58 (4th RFP) have already been made public . . . , we are willing to discuss withdrawing our motion. Short of that, however, we disagree that the motion is moot and are not willing to withdraw it at this time.").

8

question is not which records may (or may not) have been responsive to Defendants' undisclosed and self-selected criteria, but to the RFPs *as propounded*.[10]

### D. Defendants' Attacks on the Relevance of the Requests Fail

Defendants' Opposition also attacks the relevancy showing made in the Motion for each RFP. But, they ignore that Rule 26(b) "is to be broadly construed to include matters 'that bear on, or that could reasonably lead to other matters that could bear on, any issue that is or may be in the case.'" *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 2021 WL 3186959, at *2 (S.D. Ill. July 28, 2021) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

**RFP No. 47:** Defendants claim that RFP No. 47 seeks irrelevant documents because "Plaintiffs do not allege that AbbVie's speaker programs are unlawful or that AbbVie made any misrepresentations about them." Opp'n 8. But, as explained at length in the Motion, "Humira was fundamental to AbbVie's revenues and the Company's success" and the Nurse Ambassador program, which "works to maximize financial returns for AbbVie by ensuring that patients start on and continue to take HUMIRA, . . . is touted to physicians in *sales pitches* and at *speaker events*." Mot. 12 (citing ¶¶ 46-52, 103). The Complaint also relies on the investigation made by the State of California Department of Insurance ("California DOI").[11] *See, e.g.*, ¶¶ 19-23, 106-13.

---

[10] Defendants claim "that there are no documents responsive to your narrowed request . . . that are not already public," Opp'n Ex. 3 at 4, but also argue that these same public documents are *non-responsive* and *irrelevant*, *see infra* pp. 9-14. These contradictions are exacerbated by Defendants' failure to state the basis for their responsiveness determinations or search methodology.

[11] Both the redacted and the unredacted versions of the State of California's Superseding Complaint (the "California DOI Complaint") have been produced in discovery by Defendants in this matter. *See California ex rel. Suarez v. AbbVie Inc.*, No. RG18893169 (Cal. Super. Ct.). All references herein are to the unredacted version (AbbVie_00647123), which is being filed under seal as Exhibit 1. Pursuant to Local Rules 5.8 and 26.2, the redacted version of this complaint (AbbVie_00675912) is the version being filed as Exhibit 1 on the public docket. Based on the undersigned's information and belief, the two documents are substantially identical (other than the redactions).

9

After investigation and discovery, the California DOI alleged (with evidence) that "▮

▮

▮," and that the "▮

▮

▮" *See, e.g.*, Cal. DOI Compl. ¶¶ 85-88 (AbbVie_00647145). The California DOI

cited evidence that a "▮

▮" and "▮

▮"

*Id*. at ¶ 86. *See also* Order at 5 (denying Defendants' motion to dismiss and finding "Plaintiffs have sufficiently alleged that AbbVie plausibly provided classic kickbacks to physicians that are not integrally related to Humira like cash, meals, drinks, gifts, trips, patient referrals, assistance with marketing physicians' practices, proprietary medical practice management software to induce and reward Humira prescriptions.").

Moreover, AbbVie's own internal documents suggest that the Company did, in fact, conduct such ROI analyses on its speaker programs, including for the Humira Complete program or its constituent parts. *See, e.g.*, Ex. 2 (AbbVie_00273877) (Mar. 10, 2017 e-mail reporting "▮

▮

▮" which were designed to "▮")." This

e-mail also ▮

▮

▮" program's enrollments. *Id*. Just

a few weeks later, ▮

▮

10

██████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████

████████████████████████.″  Ex. 3 (AbbVie_HCP_00003946) (E-mail from ████████

████████████████████████████ (Mar. 30, 2017)).  RFP No. 47 seeks such documentation not already produced to the California DOI, which likely exists based on the materials above.

As for their relevance, AbbVie's internal discussions about the financial benefits of its speaker program stand in stark contrast (for example) to assurances it made in public documents regarding the propriety of its Humira marketing programs, thus making the company's internal discussions and analyses highly relevant to Plaintiffs' claims. *See, e.g.*, Compl. ¶ 76 (citing AbbVie's 2013 Code of Business Conduct: "We never offer or provide anything of value to healthcare professionals or other individuals to inappropriately influence their medical judgment or purchasing or prescribing practices in favor of an AbbVie product."); *id* ¶ 79 (citing 2017 Code: "We do not offer or give gifts or other items or services of value as a means to earn favor for our products or sway medical judgment."); *id* ¶ 82 (citing 2017 Code: "We don't give anything of value to induce a healthcare professional to use or recommend pharmaceutical products that are paid for or reimbursed by the government.").

Against this backdrop, the declaration submitted by current AbbVie employee Brian Dawson betrays not only a non-responsive reading of RFP No. 47 as propounded, but also of the "narrowed request" Defendants rejected (and now purport to resurrect) pertaining to RFP No. 47. *See* Dawson Decl. at ¶¶ 3-4 ("In my roles at AbbVie, I have been involved in conducting return-on-investment ('ROI') analyses for various AbbVie activities, including AbbVie's speaker programs. . . . ***I am not aware of any ROI analyses that examine speaker programs about***

11

*Humira Complete*." (emphasis added)). Yet, AbbVie's self-serving and conclusory declaration is directly contradicted by its own existing corporate documents, such as those discussed above, that demonstrate ███████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

██████.

**RFP No. 58:** Defendants assert that *all* documents that pre-dated the start of the Class Period by more than one year are *per se* irrelevant and therefore refuse any attempt at compromise on that aspect of RFP No. 58. *See* Mot. Ex. 3 at 2. Plaintiffs' Motion illustrates why this position is meritless by providing specific examples of responsive and relevant documents that would not be produced under Defendants' arbitrary temporal limitation. *See* Mot. 4, 8-9. Notwithstanding Defendants' current effort to move the goalpost back to the failed April meet-and-confer (by resurrecting the proposed narrowing of the scope of RFP No. 58 that they, themselves, previously rejected), the request as propounded is not so limited. For example, a January 19, 2011 interoffice memorandum from Defendant Gonzalez directing Abbott employees "to explore as many possible options as we can come up with" to "grow and protect Humira" does not explicitly mention any patient support programs or Gonzalez's executive compensation. Mot. Ex. E ("AbbVie Jan. 19, 2011 Mem."). Therefore, the memorandum would not have been produced if subject to the compromise discussed in April (and already made public by the House Committee), even though it is indisputably relevant to RFP No. 58 as propounded. *See, e.g.*, Opp'n Ex. 3 at 2.

Moreover, Defendants' arguments with regard to RFP No. 58's relevance are unavailing. Defendants quibble that the House Committee's "investigation concerned different issues from Plaintiffs' claims here" and, therefore, the documents AbbVie produced to the House Committee

12

are not "relevant to this case." Opp'n 10. This is false. For example, the Motion discusses an undated internal 2012 memorandum produced to the House Committee entitled "Humira Global [Long Range Plan] Strategy 2012," which is a wide-ranging planning document that touches on many of the plans and strategies intended to turbocharge Humira's growth during the Class Period. *See* Mot. 9-10 & Ex. F ("LRP Strategy 2012 Mem."). Defendants suggest that its relevance is "overstate[d]" here because the House Committee's report examines only the portion of the document discussing Humira's "enhancements" and those enhancements "are *not* the Ambassador Program, H-Link, or any other service allegedly provided to healthcare providers to reduce their burdens." Opp'n 11. But Plaintiffs are not seeking the House Committee's report, rather the documents *produced to* the House Committee that are relevant to their claims.

To illustrate, this same Humira Global LRP Strategy 2012 document also discusses "enhancements." The memorandum explains that "[o]ver the LRP [AbbVie] will be able to launch multiple *enhancements* to HUMIRA as a product *but also to different services surrounding the product*," which "will give us an additional competitive edge." LRP Strategy 2012 Mem. at ABV-HOR-00034246 (some emphases added or deleted). In other words, product "enhancements" included such characteristics as the "high-concentration formula for Humira" mentioned by the House Committee report, Opp'n 11, and requested in Gonzalez's January 19, 2011 memorandum, *see* AbbVie Jan. 19, 2011 Mem. ("As we continue to look for ways to grow and protect Humira, I would like the team to explore as many possible options as we can come up with. We are currently working on a number of *enhancements* such as: ***High concentration*** / less pain formulation. . . ." (emphases added)).

AbbVie's "enhancements" for Humira's promotion *also* included "***different services surrounding the product***." LRP Strategy 2012 Mem. at -246 (some emphases added). And what

13

were these "services"? The Humira Global LRP Strategy 2012 document described H-Link as a "new health care professional tool[]," *id*. at -247, designed to "significantly ***reduc[e] the burden in HCP offices*** and reduc[e] the time to HUMIRA usage," *id*. at -263 (emphasis added). The service that eventually would be called the Nurse Ambassador program also was described in the strategy memorandum. *See, e.g.*, *id*. at -256 (describing goals such as "[t]ransform[ing] current patient support program into patient adherence programs addressing patients' practical and perceptual barriers to treatment" and "simplification of initiation of HUMIRA and personal one-to-one support education that engages patients to remain on therapy"). That service was referenced as a "growth strateg[y]" with "the capability to offer protection of HUMIRA against . . . biosimilars" that was intended to "decrease the number of HUMIRA patients lost to" competition such as "biosimilar anti-TNFs, thereby positively impacting [sales] erosion" as such competition emerged. *Id*. at -264. As noted in the Humira Global LRP Strategy 2012 document, these enhancements were all part of the same effort to make Humira "the best selling pharmaceutical product . . . by reaching $10B in sales and . . . to become the product with the highest peak sales ever." *Id*.

An earlier document also shows that Defendant Gonzalez oversaw work done by McKinsey & Co. "to reassess the threat . . . on the Humira [long range plan] . . . and what could be done to minimize that risk," including "[i]dentify[ing] potential actions that could be taken by Abbott [later AbbVie] to sustain Humira usage post- biosimilar entry." Mot. Ex. D at -203 & -204, ECF No. 172-5; *see also*, *e.g*., LRP Strategy 2012 Mem. at -262 (noting "no ***enhancements*** to HUMIRA that result in protective differentiation versus competitors" was one "potential downside to the base case LRP" once biosimilars are introduced). Plaintiffs allege that AbbVie's marketing strategy culminated with its unlawful scheme implicating AbbVie's patient support

14

programs, and that Defendant Gonzalez stood at all times at the center of these efforts.[12] RFP No. 58 seeks documents to confirm that fact.

Finally, Defendants argue that some of AbbVie's witnesses have "flatly rejected" Plaintiffs' "theory that AbbVie developed patient support programs as a response to future competition from biosimilars." Opp'n 11-12. Such self-serving testimony is directly contradicted by AbbVie's documents, and does not make the documents sought by the Motion any less responsive. *See* LRP Strategy 2012 Mem. at -256, -264 (describing "personal one-to-one support education [program] that engages patients to remain on therapy"—i.e., the Nurse Ambassador program—as a "growth strateg[y]"); *id.* at -264 ("the capability to offer protection of HUMIRA against . . . biosimilars" in order to "decrease the number of HUMIRA patients lost to [competition including] biosimilar anti-TNFs, thereby positively impacting [sales] erosion"). *See, e.g.*, *Republic of Nicar. v. Standard Fruit Co.*, 937 F.2d 469, 476 (9th Cir. 1991) (summary judgment should have been denied because "[witness]'s testimony directly conflicts with contemporary documents in the record").

## II.     CONCLUSION

For the reasons set forth in the Motion and above, Plaintiffs respectfully request that this Court issue an Order compelling Defendants to produce documents pursuant to RFP Nos. 47 and 58, as propounded.

---

[12] Defendants' assert that only the documents Defendant "Chase actually saw" can be relevant to his scienter, Opp'n 9, and also claim that "documents that were never shared with Mr. Gonzalez could [not] be relevant to his scienter," *id.* at 5. This is nonsense, as the content of such documents could easily be communicated through in-person meetings, telephone calls, or other methods that do not rely on an e-mail transmission. (And, in an effort to explain the dearth of custodial e-mail documents produced from Defendant Gonzalez in particular, Defendants previously acknowledged his practice of deliberately minimizing his e-mail communications, thus further undercutting this supposed requirement.)

DATED: July 21, 2022

        Respectfully Submitted,

        /s/ *Max N. Gruetzmacher*
        **MOTLEY RICE LLC**
        Gregg S. Levin (*pro hac vice*)
        Max N. Gruetzmacher
        Christopher F. Moriarty
        Erin C. Williams (*pro hac vice*)
        28 Bridgeside Blvd.
        Mt. Pleasant, SC 29464
        (843) 216-9000

        *Counsel for the Class and Class Representative Metzler Asset Management GmbH*

        **ROBBINS GELLER RUDMAN & DOWD LLP**
        Arthur C. Leahy (*pro hac vice*)
        Lucas F. Olts (*pro hac vice*)
        Kevin A. Lavelle (*pro hac vice*)
        655 West Broadway, Suite 1900
        San Diego, CA 92101-8498
        (619) 231-1058

        *Counsel for Class Representative Ironworkers National Pension Plan*

        **KIRBY MCINERNEY**
        Anthony F. Fata
        211 West Wacker Drive
        Suite 550
        Chicago, IL 60606
        (312) 767-5180
        afata@kmllp.com

        *Liaison Counsel*